UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DWAYNE HILL, | |
| Plaintiff, | No. 19 C 6080 |
| v. | Judge Thomas M. Durkin |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS ROBERTO GARCIA, JOSE GOMEZ, JONATHAN APACIBLE, GEORGE LOPEZ, WAYNE RASCHKE, THOMAS CRAIN, JEFFREY ADAMIK, and UNKNOWN OFFICERS, | |
| Defendants. | |
| RICKEY FOUNTAIN, | |
| Plaintiff, | |
| v. | |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS ROBERTO GARCIA, JOSE GOMEZ, JONATHAN APACIBLE, GEORGE LOPEZ, WAYNE RASCHKE, THOMAS CRAIN, JEFFREY ADAMIK, and UNKNOWN OFFICERS, | No. 19 C 6081 |
| | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Dwayne Hill and Rickey Fountain allege that officers from the Chicago Police Department secured their wrongful convictions through a series of constitutional violations related to fabricating evidence and withholding exculpatory

1

evidence. The City of Chicago and the defendant officers moved to dismiss Plaintiffs' ten-count complaints in their entirety [No. 19-cv-6080, R. 36; No. 19-cv-6081, R. 36]. Although Hill and Fountain filed separate cases, the Defendants' motion addressed both complaints together (as does this order). The Defendants' motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard,

2

the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

On July 15, 2009, Demetrius Harris was in his van at the intersection of Kolmar and Van Buren in Chicago. No. 19-cv-6090, R.1 ¶ 12. A black car approached the intersection and Harris observed a gun pointing out of the window. *Id.* ¶ 13. Ten shots were fired, and Harris was struck by at least one bullet. *Id.* ¶¶ 14-15. Harris fled the scene and later went to the hospital for treatment. *Id.* ¶ 14. He eventually recovered and was discharged. *Id.* ¶ 15.

Harris's friend Andy Wallace witnessed the shooting. *Id.* ¶ 16. He observed a light-skinned African American man with dreadlocks lean out of the vehicle and shoot the gun. *Id.* Harris spoke with Wallace by telephone a few days after the shooting and said he did not know who shot him. *Id.* ¶ 17.

While Harris remained hospitalized and heavily medicated, Defendant Officers Roberto Garcia and Jose Gomez manipulated Harris into falsely identifying Dwayne Hill as the shooter and Rickey Fountain as the getaway driver. *Id.* ¶ 19. Once the hospital released Harris, he recanted any statements that implicated Hill and Fountain and said he did not know who committed the shooting. *Id.* ¶ 20.

Hill was arrested on September 2, 2009. *Id.* ¶ 21. The next day, Defendant Officers Lopez and Jonathan Apacible went to Steven McKinnie's (Harris's cousin) home and took him to the police station against his will to discuss the Harris shooting. *Id.* ¶ 23. McKinnie did not witness the shooting, did not know Hill or Fountain when

the shooting occurred, and did not talk to the police on the incident date. *Id.* ¶ 22; No. 19-cv-6081, R. 1 ¶ 22. Once in custody, Defendant Officers Wayne Raschke and Thomas Crain questioned McKinnie. No. 19-cv-6080, R.1 ¶ 25. McKinnie told Raschke and Crain that he knew nothing about the shooting, at which point the officers closed and locked the interrogation room door. *Id.* ¶ 26. When McKinnie asked to leave, the officers told him they could hold him for up to 48 hours and handcuffed him to a bench in the room. *Id.* ¶ 27.

McKinnie had separately been arrested on gun and drug crimes in 2009 but had been released without charges. *Id.* ¶ 29. The Defendant officers threatened to pursue those charges if McKinnie did not identify Hill and Fountain as the shooters. *Id.*

Defendant Officers Raschke, Crain, Lopez, and Apacible then coerced McKinnie into falsely implicating Hill and Fountain in the shooting. *Id.* ¶ 25; No. 19-cv-6081, R. 1 ¶ 25. Specifically, the defendants fabricated a false narrative in which McKinnie witnessed the shooting, flagged down Apacible and Lopez, jumped into Apacible's squad car, and excitedly told them that "Pig and Weezy" (nicknames for Hill and Fountain) had shot Harris. No. 19-cv-6080, R.1 ¶ 28. According to the false narrative, McKinnie then came to the police station on July 15, 2009, at which point Defendant Jeffrey Adamik interviewed McKinnie about the shooting for five or ten minutes before he was let go. *Id.*

At the bench trial, Harris's and McKinnie's statements were the only evidence linking Hill and Fountain to the shooting. *Id.* ¶ 31; No. 19-cv-6081, R. 1 ¶ 31. On the

4

first day of trial, Harris testified consistently with his recantation affidavit, stating that he did not remember speaking with the police at the hospital because he was heavily medicated and did not know who shot him. *Id.* ¶ 32. On the second day of trial, Harris recanted his recantation, describing that he had been threatened and now wished to inculpate Hill and Fountain. *Id.* McKinnie testified that he did not know Hill or Fountain, did not know who shot Harris, and spoke to the police for the first time on September 3, 2009 when they forced him to come to the station. *Id.* ¶ 34; No. 19-cv-6081, R. 1 ¶ 34. Defendant Officers Apacible, Raschke, and Adamik testified that McKinnie witnessed the shooting and immediately came forward. No. 19-cv-6080, R. 1 ¶ 35. The judge convicted Hill and Fountain based on Harris's and McKinnie's pretrial statements. No. 19-cv-6080, R. 1 ¶ 36. Plaintiffs were sentenced to 26 years in prison. *Id.* ¶ 37; No. 19-cv-6081, R. 1 ¶ 37.

During post-conviction proceedings, Hill and Fountain presented alibi evidence, McKinnie's statements at trial, and exculpatory evidence from Andy Wallace. No. 19-cv-6080, R. 1 ¶ 38; No. 19-cv-6081, R. 1 ¶ 38. The State did not oppose Hill's and Fountain's request to vacate their convictions, which were overturned on September 12, 2018. No. 19-cv-6080, R. 1 ¶ 39; No. 19-cv-6081, R. 1 ¶ 39. In total, Hill spent seven years incarcerated and Fountain spent nearly six. No. 19-cv-6080, R. 1 ¶ 1; No. 19-cv-6081, R. 1 ¶ 1.

Plaintiffs allege that the Chicago Police Department has a widespread practice of fabricating evidence and suppressing exculpatory evidence. No. 19-cv-6080, R. 1 ¶ 44. Specifically, Plaintiffs point to Federal Bureau of Investigation Report FD-302,

5

which states that Chicago police officers would feed information to witnesses, coerce them into sticking to a detective's theory of the case, physically abuse witnesses, and work with witnesses to develop and rehearse false narratives. *Id.* ¶ 47. The Plaintiffs also allege that since 1986 Chicago police officers fabricated false evidence or suppressed exculpatory evidence in no fewer than 70 cases, and that the department systematically withheld exculpatory evidence from the State's Attorney's Office. *Id.* ¶¶ 44, 48. The plaintiffs also maintain that Chicago Police Department supervisors condoned and facilitated a code of silence that allowed officers to act with impunity, and failed to adequately train, supervise, and discipline its officers. *Id.* ¶¶ 56, 60.

Hill and Fountain sued the Defendant officers and the City of Chicago on September 11, 2019 for 42 U.S.C. § 1983 violations of due process (Count I), loss of liberty (Count II), conspiracy (Count III), failure to intervene (Count IV), and *Monell* liability (Count V). The Plaintiffs also sued for intentional infliction of emotional distress (Count VI), malicious prosecution (Count VII), civil conspiracy (Count VIII), *respondeat superior* (Count IX), and indemnification (Count X). The Defendants moved to dismiss all claims.

## Analysis

### I. Due Process (Count I)

Plaintiffs allege that Defendants violated their due process rights by fabricating testimony and withholding exculpatory evidence. Defendants make two arguments for why Plaintiffs fail to state a claim. First, Defendants point out that while fabricating evidence may provide the basis for a due process claim, coercing

6

testimony does not. *See Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (drawing distinction between fabricated and coerced evidence). At best, Defendants argue, the complaints merely allege coercion. But the complaints specifically allege that Defendants fabricated a false narrative in which McKinnie witnessed the shooting and immediately reported it to police. Moreover, the complaints contend that this evidence "resulted directly in the unjust criminal conviction of Plaintiff[s]." No. 19-cv-6080, R. 1 ¶ 68; No. 19-cv-6081, R. 1 ¶ 68. This is enough to sustain a due process claim for fabrication of evidence. *See Avery*, 847 F.3d at 439 ("convictions premised on deliberately falsified evidence will always violate the defendant's right to due process.").

Relatedly, Defendants argue that Plaintiffs fail to identify any exculpatory evidence that the officers withheld and thus fail to state a due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Failure to disclose material impeachment evidence may violate an accused's right to due process under *Brady*, *see Avery*, 847 F.3d at 443-44, including if "government officials suppressed evidence of fabrication." *Lewis v. City of Chicago*, 914 F.3d 472, 480 (7th Cir. 2019). However, "evidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant." *Avery*, 847 F.3d at 443. Defendants contend that Plaintiffs knew during trial that Harris's and McKinnie's pretrial statements were unreliable and thus *Brady* does not apply. But knowing that statements are unreliable is different than knowing the means by which those statements were obtained. *See id.* (reversing summary judgment for defendant on *Brady* claim and stating that "[Plaintiff] knew

7

that the informants' statements were false, but he did *not* know about the pressure tactics and inducements the detectives used to obtain them."). The complaint does not directly address whether Plaintiffs knew about the tactics used to extract false statements from McKinnie. But the complaint alleges that the Defendants testified consistent with the fabricated narrative, that the judge convicted Plaintiffs based on Harris's and McKinnie's pretrial statements, and that the suppressed evidence would have demonstrated Plaintiffs' innocence. This is enough to draw a reasonable inference in the Plaintiffs' favor – as the Court must at this stage – that they were unaware of the means by which the officers allegedly extracted McKinnie's statements. Combined with Plaintiffs' allegations of fabricated evidence, this is enough to sustain a due process claim. *See Goudy v. Cummings*, 922 F.3d 834, 838 (7th Cir. 2019) ("It is important to clarify that although the parties occasionally refer to [plaintiff's] '*Brady* claims' or 'identification procedure claim,' his allegations do not give rise to separate *claims* under section 1983. [Plaintiff] has presented a single claim: that the defendants are liable for causing him to receive an unfair trial in violation of his due process rights."). Defendants' motion to dismiss Count I is denied.[1]

---

[1] Defendants also assert that Plaintiffs are judicially estopped from arguing the police coerced Harris into blaming them for the shooting. Judicial estoppel is an affirmative defense around which the law does not require a plaintiff to plead. *See Thompson v. O'Bryant*, 2008 WL 1924954, at *2 (N.D. Ill. Apr. 30, 2008). Thus, the Court does not consider the argument here.

## II.     *Manuel* Loss of Liberty (Count II)[2]

Defendants next move to dismiss Plaintiffs' unlawful pretrial detention claims as time-barred. In Illinois, section 1983 claims have a two-year statute of limitations. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Defendants contend that Plaintiffs' claims accrued no later than the date of their convictions, January 31, 2013. Plaintiffs maintain that their claims did not accrue until their convictions were overturned in September 2018. *See Heck v. Humphrey*, 512 U.S. 477, 486-89 (1994) (holding that if a criminal defendant's success on a civil claim would necessarily imply the invalidity of a criminal conviction, the civil action does not accrue until the conviction is invalidated). But the *Heck* bar does not toll the statute of limitations on Fourth Amendment unlawful pretrial detention claims. *Brown v. City of Chicago*, 2019 WL 4958214, at *3 (N.D. Ill. Oct. 8, 2019) ("any unlawful pretrial detention claim that Plaintiff might have asserted would be time-barred under Seventh Circuit precedent holding that such a claim is not subject to the delayed accrual rule from *Heck*."). *McDonough v. Smith*, 139 S. Ct. 2149 (2019), does not change this result. As *Brown* points out, *McDonough* was concerned with avoiding "collateral attacks on criminal judgments through civil litigation." *Brown*, 2019 WL 4958214, at *3 (quoting *McDonough*, 139 S. Ct. at 2157). And "unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and

---

[2] Plaintiffs style Count II as a "*Manuel* Loss of Liberty Claim." This refers to *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), which held that the Fourth Amendment governs claims for unlawful pretrial detention even beyond the start of legal process. *Id.* at 920.

9

so such claims are not suspended under the *Heck* bar to suit." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). Rather, the Seventh Circuit recently clarified that a wrongful pretrial detention claim accrues upon conviction (if not sooner). *Knox v. Curtis*, 771 Fed. Appx. 656, 658 (7th Cir. 2019) ("[plaintiff's] claim that he was arrested and detained without probable cause accrued either in August 2017 (when he was released on bond), or in November 2017 (when he was convicted).") (internal citations omitted); *see also Brown*, 2019 WL 4958214, at *3 (concluding the same). Accordingly, the Plaintiffs' wrongful pretrial detention claims accrued no later than January 31, 2013, and the statute of limitations has long since run. Defendants' motion to dismiss Count II of the complaints is granted.

**III.    § 1983 Conspiracy (Count III) and Failure to Intervene (Count IV)**

The Defendants first argue that Plaintiffs' section 1983 conspiracy and failure to intervene claims (as well as the due process, loss of liberty, and malicious prosecution claims) must be dismissed to the extent they are based on the Defendants' trial testimony. The Plaintiffs clarify in their response that this is not part of their claims. The Court thus need not consider this argument.

The Defendants also argue that Plaintiffs' section 1983 conspiracy and failure to intervene claims must be dismissed because they fail to allege an underlying constitutional violation. *See Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) ("conspiracy, failure to intervene, and municipal liability claims each depend on proof of an underlying constitutional violation."). As previously discussed, the Plaintiffs have stated a claim for a violation of their due process rights. As such, this

10

argument fails. The Defendants' advance no other reasons why Counts III and IV should be dismissed. Accordingly, their motion is denied as to those counts.

## IV. *Monell* Liability (Count V)

To establish a governmental entity's liability under *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), a plaintiff must establish the existence of: (1) an express policy; (2) an unofficial governmental practice or custom that is widespread and well-settled, or (3) an act by an official with final policymaking authority. *See Thomas v. Cook County Sherriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010). The policy or custom must be "the moving force" behind the constitutional violation. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). The gravamen of a *Monell* claim "is not individual misconduct by police officers (that is covered elsewhere in § 1983), but a *widespread practice* that permeates a critical mass of the institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). For this reason, "misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

Plaintiffs appear to rely on a widespread practice theory of liability. To be successful on such a claim, "the plaintiff must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or gap in expressed policies, or 'a series of violations to lay the premise of deliberate indifference.'" *Thomas*, 604 F.3d at 303 (internal citations omitted) (quoting *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003)). Defendants contend that

11

Plaintiffs fail to allege the policy at issue, or that any such policy has a causal link to their claims. In so arguing, Defendants set the bar too high for a motion to dismiss. True, Plaintiffs allege several practices and customs unrelated to the claims in this case. But the complaint also alleges that the Chicago Police Department had a widespread practice of suppressing and manufacturing evidence and contriving false narratives against innocent persons that they coerced witnesses into adopting. *See, e.g.,* No. 19-cv-6080, R. 1 ¶ 46. The complaint then supports those allegations by stating that at least 70 cases have come to light since 1986 in which Chicago Police Department officers have fabricated evidence or suppressed exculpatory evidence that led to convictions, *id.* ¶ 44, describing a Federal Bureau of Investigation report that discusses Chicago police detectives feeding information to witnesses and working with them to rehearse false narratives, *id.* ¶ 47, and describing the department's pattern of suppressing exculpatory information which they support by citing to several other cases, *id.* ¶¶ 50-53. Moreover, the complaint alleges that the Defendants acted in accordance with these widespread practices in securing the wrongful conviction of Plaintiffs. This is enough to make the Plaintiffs' *Monell* claim plausible. Defendants' motion to dismiss Count V is denied.

### V. Intentional Infliction of Emotional Distress (Count VI)

Defendants also move to dismiss Count VI for intentional infliction of emotional distress (IIED). As with Plaintiffs' Fourth Amendment claims, the first issue is whether the claims are timely. In Illinois, an IIED claim against a local entity or its employees has a one year-statute of limitations. *See* 745 ILCS 10/8-101(a).

12

Defendants argue that Plaintiffs' claims accrued in 2009 when they were arrested and are now time-barred. R. 38 at 12 (citing *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *Stapinski v. Masterson*, 2017 WL 497772, at *4 (N.D. Ill. Feb. 7, 2017); *Friends-Smiley v. City of Chicago*, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016)). For their part, Plaintiffs contend that their claims did not accrue until after their convictions were overturned. R. 44 at 17-18 (collecting cases).

*Smith v. Burge*, 222 F. Supp. 3d 669 (N.D. Ill. 2016) (St. Eve, J.), is instructive. The defendants in *Smith* moved to dismiss the plaintiff's IIED claim as untimely under *Bridewell*. *See Bridewell*, 730 F.3d at 678 (holding IIED claim accrues on date of arrest). But *Smith* distinguished *Bridewell* because the *Bridewell* plaintiff was never convicted and thus the case did not implicate the *Heck* bar. Rather, the court explained that the case more closely aligned with *Parish v. Elkhart*, 614 F.3d 677 (7th Cir. 2010), which held that the plaintiff could not bring his IIED claim until the criminal proceedings ended in his favor. *See* 614 F.3d at 684. *Smith* explained that, as in *Parish*, the plaintiff's IIED claim was timely because it was based on the defendants' coercion and fabrication of testimony that was used to procure his conviction, and that alleging those facts before the conviction was vacated would have directly attacked the conviction's validity in violation of *Heck*. *Smith*, 222 F. Supp. 3d at 693.

Similar considerations apply here. The Plaintiffs clearly state in their response to the Defendants' motion that their IIED claims are based on the fabrication of evidence that led to their convictions. R. 44 at 16 ("Fabricating evidence *to secure a*

13

*wrongful conviction* is undoubtedly sufficiently outrageous to state a claim for IIED.") (emphasis added). Plaintiffs could not bring claims for fabricating a case until their convictions were overturned. *See Parish*, 614 F.3d at 684 ("The factual allegations that Parish was innocent and that the officers committed perjury, falsified evidence, coerced witnesses to commit perjury, and withheld exculpatory evidence are all challenges to the conviction that would only have been proper while the conviction was still outstanding if Parish brought them through proscribed post-conviction relief channels."). To be sure, "misconduct by the police does not (at least, need not) imply the invalidity of any particular conviction." *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). Indeed, Plaintiffs' IIED claims would not be timely if they were based solely on the Defendants' interrogation tactics independent of their convictions. But the wrongful conviction is the crux of Plaintiffs' claims. As such, Plaintiffs' IIED claims implicate *Heck*, could not be brought until September 2018 when their convictions were overturned, and are now timely. *See Brown v. City of Chicago*, 2019 WL 4694685, at *7 (N.D. Ill. Sept. 26, 2019) (holding IIED claim timely due to *Heck*).

Defendants also argue that the complaint fails to describe behavior sufficiently outrageous to state a claim for IIED. But the complaint's allegations that Defendants fabricated evidence of Plaintiffs' guilt and withheld exculpatory evidence is enough to support their claims. *See Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003) ("If, as alleged, defendants fabricated false or misleading evidence of [plaintiff's] guilt or concealed exculpatory evidence from prosecutors, that behavior is sufficiently 'outrageous' to support a claim for intentional infliction of emotional

14

distress."). Plaintiffs have pleaded enough to pass muster under 12(b)(6). Defendants' motion to dismiss Count VI is denied.

## VI. Malicious Prosecution (Count VII)

Defendants next move to dismiss Plaintiffs' claims for malicious prosecution. The elements of a malicious prosecution claim in Illinois are: "(1) the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff; (2) termination of the original proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice; and (5) special damages." *Grundhoefer v. Sorin*, 20 N.E.3d 775, 780 (Ill. App. Ct. 2014). Defendants argue that Plaintiffs cannot sustain their claims because the judges in each of their cases found there was probable cause to detain them. But Plaintiffs can still demonstrate that no probable cause existed if the judges' findings were based on fabricated evidence supplied by the defendant officers. *See Alexander v. United States*, 721 F.3d 418, 423 (7th Cir. 2013) ("Knowingly false statements by the affiant cannot support a finding of probable cause, and as we read the complaint, that is all there was."); *Tucker v. Lally*, 2020 WL 60205, at *4 (N.D. Ill. Jan. 6, 2020) ("False statements and fabricated evidence cannot serve as the basis for probable cause."); *Manuel*, 137 S. Ct. at 918-19 (when a judge's probable-cause determination is predicated solely on a police officer's false statements it does not satisfy the Fourth Amendment's probable-cause requirement.). Here, the complaint alleges that the Defendants fabricated the only evidence linking Plaintiffs to the crime. Accepting that as true, as the law requires at

15

this stage, the Court cannot conclude there was probable cause as a matter of law. Defendants' motion to dismiss Count VII is denied.

### VII. Civil Conspiracy (Count VIII)

Defendants move to dismiss Plaintiffs' state-law conspiracy claims as duplicative of their malicious prosecution and IIED claims. Plaintiffs argue that their conspiracy claims go beyond what the law requires to prove IIED or malicious prosecution and thus are not duplicative. The Court declines to dismiss the claims at this stage. "Illinois recognizes civil conspiracy as a distinct cause of action," and "dismissal of a conspiracy count as duplicative of other theories of recovery alleged in the complaint [would be] premature." *Black v. Wrigley*, 2017 WL 8186996, at *14 (N.D. Ill. Dec. 8, 2017) (alteration in original) (quoting *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998)); *see also Cameron v. City of Chicago*, 2017 WL 3421474, at *5 (N.D. Ill. Aug. 9, 2017) (declining to dismiss state-law conspiracy claim as duplicative of malicious prosecution claim). Defendants' motion to dismiss Count VIII is denied.

### VIII. *Respondeat Superior* (Count IX) and Indemnification (Count X)

Defendants move to dismiss Counts IX and X to the extent Plaintiffs' other state-law claims are subject to dismissal. As discussed, Plaintiffs' state-law claims are moving forward. Accordingly, Defendants' motion to dismiss Counts IX and X is denied.

## Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss Count II of the complaints. Defendants' motion [R. 36] is denied in all other respects.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 31, 2020